**Commonwealth v. Kosmin**

*Logan M. Bullitt, IV, Assistant District Attorney*, for Commonwealth.

*George B. Ditter, Assistant Public Defender*, for defendant.

STANZIANI, *J.*, January 30, 1978—

## CASE SUMMARY

Defendant was arrested on September 9, 1976, on charges of promoting prostitution and criminal conspiracy in connection with his activities as manager of Dial-A-Massage, Inc. Despite his alleged eligibility for a free, court-appointed attorney, defendant voluntarily and knowingly waived his right to counsel and elected to conduct his own defense. On February 15, 1977, a jury trial was held before the Honorable Joseph H. Stanziani and resulted in a verdict of guilty on all charges. Defendant then requested the services of court-appointed counsel. Motions and amended motions for new trial and in arrest of judgment were filed, argued, and denied by the court. Defendant was sentenced on November 1, 1977, and entered an appeal.

## FACTS

As the result of an investigation by the Pennsylvania State Police, defendant was arrested on September 9, 1976, and charged with promoting prostitution in violation of the Act of December 6, 1972, P.L. 1482, as amended, 18 C.P.S.A. §5902(b)(4) and (8), and criminal conspiracy, 18 C.P.S.A. §903. A preliminary hearing was held on September 24, 1976, at which time a prima facie case was established by the Commonwealth on both charges. At that hearing, defendant represented himself, but acknowledged that he had been advised of his constitutional right to be represented at that hearing by counsel or to have counsel appointed free of charge if he could not afford a private attorney. Informations were filed against defendant on October 15, 1976.

On January 13, 1977, defendant came to this court in response to the Commonwealth's request for a continuance. At that proceeding defendant stated that he wished to have a public defender as co-counsel, but that he wanted to conduct his own defense so that he could personally discredit certain witnesses for the Commonwealth. Upon learning that defendant had not even applied for a public defender, the court offered defendant the following advice:

"THE COURT: I think the first thing you should do is go out in the hall and apply for a Public Defender.

MR. KOSMIN: You do?

THE COURT: Yes, because I think you are going to be at a distinct disadvantage if you try to represent yourself. No matter how intelligent you are and no matter how much work you do in studying, you are not going to be able to do the same kind of a job as a person who has gone through law school, passed the bar examination and has had experience in the courts. I'm going to recommend that to you and that you do that right away, Mr. Kosmin. Walk right out in the hall and—

MR. KOSMIN: I talked with . . . (a Public Defender) a couple of times.

THE COURT: Well, I would certainly do that today so that they will have the time before the trial to enter their appearance, if you qualify, and to represent you."

On February 14, 1977, at a pre-trial hearing on a motion by co-defendant to sever the case, defendant told the court that he had decided to represent himself. On February 15, 1977, the trial judge con-

ducted a colloquy with defendant to establish that he had made a knowing and intelligent waiver of his right to counsel.

"THE COURT: You indicate here in the waiver of counsel that you know that you have the right to have a lawyer that you choose yourself and pay for yourself, or the right to have a lawyer chosen by the Court to represent you without payment of money by you or your family, is that correct?

MR. KOSMIN: Yes, sir.

THE COURT: And you state that you do not want to have a lawyer advise and speak for you, and you understand that your signing this paper shows your decision not to have a lawyer?

MR. KOSMIN: Yes, sir.

THE COURT: Have there been any threats or promises which caused you to decide not to have a lawyer?

MR. KOSMIN: No, sir.

THE COURT: And you made the decision voluntarily and freely?

MR. KOSMIN: Yes, sir."

Following that colloquy, defendant informed the court that although he had qualified as an indigent for purposes of obtaining free legal counsel, he had still not applied to the public defender. When pressed by the court as to why, defendant offered this justification:

"THE COURT: So, the question is, have you applied for a Public Defender?

MR. KOSMIN: No, I have not, sir.

THE COURT: Why not?

MR. KOSMIN: Because I just really don't know why. I think I would like to defend myself with the Court's permission.

THE COURT: Well I'm not going to refuse permission for that, I just wanted to make sure that on the record that it's clear that this has been done voluntarily and freely by you.

MR. KOSMIN: Completely voluntary, Your Honor."

The trial judge also considered assigning advisory counsel to defendant, but decided against such action in light of defendant's waiver and after the Chief Public Defender urged that such an assignment *not* be made because of a potential conflict of interest. Defendant was present in chambers during that discussion and did not reassert his request for assistance of advisory counsel.

Defendant's lack of legal training was soon apparent. Although he spent days auditing trials and reading in the law library, as well as importuning attorneys in the court house law library for legal advice, defendant was unable to avoid procedural and substantive errors during his trial. He filed seventeen separate pre-trial motions, all of which were painstakingly dealt with by the court, and only one of which raised a valid legal issue. He also failed to subpoena crucial defense witnesses for a pre-trial suppression hearing. During presentation of the Commonwealth's case, he did not recognize and object to hearsay testimony. Despite explanation from the bench, he was unable to question his own witnesses without repeated use of leading questions to which the district attorney properly objected. These recurring errors by the defendant forced the court to warn him on several occasions

that such questions were improper and that no exceptions to evidentiary procedures could be made simply because he was a layman.

On March 1, 1977, after a jury trial, defendant was convicted on both charges. Thereafter, with the assistance of the public defender, defendant filed motions and later amended motions for new trial and in arrest of judgment, the denial of which prompts this appeal.

## ISSUES

1. Did the court properly refuse to appoint advisory counsel to assist defendant after he had knowingly and intelligently waived his right to a free, court-appointed attorney?

• • •

3. Did sustaining Commonwealth objections to leading questions during defendant's case in chief constitute a proper use of discretion?

• • •

## DISCUSSION

### ISSUE 1

As his primary ground of appeal, defendant contends that he is entitled to a new trial because the court failed to appoint advisory counsel to assist him even though he had knowingly and intelligently waived his right to a free, court-appointed attorney.[1] Defendant now maintains that he

---

1. In this case defendant, although indigent, did not apply for a public defender, thereby distinguishing this case from those in which defendant rejects counsel assigned to him and elects to represent himself.

wished to exercise both his right to represent himself and his right to assistance of counsel.

As authority for asserting both these rights concurrently, defendant relies on the case of Com. v. Africa, 466 Pa. 603, 353 A. 2d 855 (1976). In that case, the Supreme Court commented by way of dicta on the advisability of appointing standby counsel to assist a defendant in a pro se representation, "particularly when he may be disruptive." 466 Pa. at 621. In Africa, defendants disrupted their trial by shouting obscenities at the judge, demanding to be bound and gagged, and ignoring proper judicial rulings. No such behavior was anticipated from this defendant and none was encountered during his trial. Accordingly, even if the holding of Africa *required* advisory counsel (which it does not), it clearly does not apply to the facts of this case.

Defendant also argues that Pa.R.Crim.P. 318(c)(ii) affords the defendant the right to advisory counsel. Paragraph (ii), cannot and should not be read out of its context. The parenthetical clause in the first line of paragraph (ii) refers only to actions taken pursuant to paragraph (i). Pa.R.Crim.P. 318(c) reads:

"(c) In all cases (i) The court of its own motion, shall assign counsel to represent a defendant whenever the interests of justice require it. (ii) When, after counsel is assigned, a defendant refuses to accept his services, counsel shall be directed in the presence of the defendant to attend the preliminary hearing and trial and to be available to the defendant for consultation and advice thereafter."

In any event, the rule is inapplicable to the facts of this case because defendant never applied for an

attorney or had counsel assigned to his case. Defendant knowingly waived his right to have counsel assigned to him despite the urging of the trial judge who warned him of the need for proper representation in no uncertain terms. Moreover, this rule requires the trial court to exercise its discretion. As previously noted, the trial judge considered the appointment of advisory counsel and decided against such action. Defendant had knowingly, intelligently and voluntarily waived counsel and the chief public defender had presented cogent reasons for not appointing advisory counsel.

There is also legal precedent for the trial judge's decision not to appoint advisory counsel in this case. Although predating Rule 318(c), Com. v. Ferenc, 92 Montg. 176 (1969), affirmed per curiam 216 Pa. Superior Ct. 782, 261 A. 2d 117 (1970), held that where defendant expressly refused to be represented at trial by a public defender but demanded the assistance of an advisory counsel in the preparation of his defense, defendant had no constitutional right to the appointment of counsel under conditions requiring the attorney to surrender any of the substantial prerogatives of his office including the right to conduct, manage, and supervise the defense and interrogate witnesses.[2] The court reasoned that the Sixth Amendment gives a defendant the alternative right to represent himself or be represented by counsel, it does not include a hybrid right to representation partly by counsel and partly by defendant. This ruling recognizes that while a lawyer may serve a client as both an advisor and an

2. Rule 318 does not overturn Ferenc; it merely permits the trial court discretion to accord a defendant assistance of counsel in excess of basic constitutional guarantees when the interests of justice so require.

advocate, it does violence to our adversarial trial system to relegate an attorney from the role of an active courtroom advocate to that of a passive advisor.[3] Accordingly, the trial court was under no obligation to appoint advisory counsel where defendant made a knowing and intelligent waiver of counsel and chose to defend himself.

• • •

## ISSUE 3

Defendant further asserts that the trial judge erred in sustaining many of the Commonwealth's objections to leading questions, thereby depriving defendant of an opportunity to make a fair submission of the facts to the jury. Defendant acknowledges that the court informed him, in chambers, of the correct legal rule with respect to asking leading questions to a friendly witness. Specifically, the court stated:

"THE COURT: Mr. Kosmin, I want to caution you now, because it is now your case, and before we get into some real problems. Most lay people don't understand the difference between a leading question and a question that is not a leading question. You have been cross-examining witnesses up until this point, and in cross-examination, you may ask leading questions, which means you may suggest things to witnesses, you may tell them things, you may explain to them some of the facts that have come out.

---

3. This court also notes that assignment of advisory counsel might well violate defendant's right to self-representation under Faretta v. California, 422 U.S. 806 (1975), which held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily elects to do so, and that the state may not force a lawyer upon him when he insists that he wants to conduct his own defense.

With your own witness—when a person is your own witness, the only things that you can ask are such things as what happened, when did it happen. You may not say things like, 'Isn't it true that you were coerced,' because the minute you say that, that is a leading question.

Mr. Bullitt is going to be very, very careful, because he must be, about your suggesting anything to any of your witnesses. If in any way you suggest to your witnesses what the answer should be, you are leading them, and I will have to sustain an objection to it. Okay?

MR. KOSMIN: Yes, sir.

THE COURT: Because it is not your testimony. It is her testimony that is being taken. Okay?

MR. KOSMIN: Yes, sir. Okay."

Despite this explanation, defendant was unable to ask questions of his witnesses which did not suggest the desired answer. On several occasions the trial judge explained to defendant from the bench that if a witness "can answer the question yes or no, it is *likely* to be a leading question." This instruction was, in effect, an attempt by the court to give defendant further guidance in a manner which he could understand. The necessity for such instruction is indicated by the defendant's failure to make any effort to phrase his questions in a proper form.

"MR. KOSMIN [TO DEFENSE WITNESS]: Is this your own statement or was this prompted, this statement?

DISTRICT ATTORNEY: I object as leading again.

COURT: Objection is sustained. Mr. Kosmin, you know, we have gotten to the point where what you do is you ask a leading question which suggests to

the witness what she should say, and then there is an objection and it is sustained and then you ask her another question. What do you expect her to do? She's going to answer what you just said obviously. She's your witness. Now stop making a mockery of this trial."

In light of the court's instruction and defendant's repeated use of improper direct examination, these rulings were neither inappropriate nor based on an incorrect definition of a leading question.